# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ERICA ANTONIA BENAVIDEZ-PENA,

                Petitioner,

        v.

FERETI SEMAIA, et al.,

                Respondents.

Case No. 5:26-cv-03228-MBK

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Erica Antonia Benavidez-Pena, a native and citizen of Nicaragua, is currently in the custody of the Department of Homeland Security ("DHS") at Adelanto Detention Facility. Ms. Benavidez-Pena fled Nicaragua and entered the United States in El Paso, Texas, without inspection with her two daughters and grandchild on or about December 26, 2022. Immigration authorities apprehended her shortly thereafter and, the following day, released her on parole. Since that time, Petitioner has complied

with her supervision conditions, applied for asylum, maintained gainful employment, paid taxes, and lived in Los Angeles with close family.

On April 22, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner when she reported as required to her ICE check-in appointment. The officers did not explain why Petitioner was being arrested or provide her an opportunity to explain why she should not be detained. The officers transported Petitioner to Adelanto Detention Facility, where she remains today. Petitioner filed an initial petition for writ of habeas corpus on May 4, 2026, which this Court granted on May 14, 2026. *See Erica Benavidez-Pena v. DHS Secretary Markwayne Mullin*, C.D. Cal., Case No. 5:26-cv-02380-MBK, *("Benavidez-Pena I")*, Dkt. 1, 11.  The Court ordered Respondents to provide Petitioner with a bond hearing within seven days. Petitioner was provided a bond hearing on May 19, 2026, at which the Immigration Judge denied Petitioner's release on bond.

Petitioner thereafter filed the instant habeas action, challenging her re-detention and on-going confinement under the Due Process Clause and the immigration regulations. She requests that the Court order her immediate release. Respondents filed an Answer in which they argue that the Court does not have jurisdiction to review the IJ's bond decision and that the Court should not consider her claims because she has not exhausted her administrative remedies. However, Respondents do not address Petitioner's due process claims on the merits.

For the reasons that follow, the Court grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing where the

Government must show material changed circumstances justifying Petitioner's detention.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner Erica Benavidez-Pena is a 51 year-old native and citizen of Nicaragua. Dkt. 1 at 2. On or about December 26, 2022, Petitioner entered the United States without inspection through El Paso, Texas, with her two daughters and grandchild. *Id.* Immediately upon her entry to the United States, immigration authorities apprehended Petitioner. *Id.* During this initial detention, Ms. Benavidez-Pena also indicated an intention to apply for political asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* On December 27, 2022, immigration authorities released her from custody on parole. *Id.* Ms. Benavidez-Pena moved to Los Angeles, and reported to ICE for her first appointment on February 13, 2023, within 150 days of her arrival, as required. *Id.*

Since her release in 2022, Petitioner has remained continuously in the United States. Petitioner filed an asylum application with United States Citizenship and Immigration Services ("USCIS") on April 16, 2024, which remains pending. *Id.* at 2. Petitioner resided in Los Angeles with close family members, maintained gainful employment, and paid taxes. *Id.* at 3, Dkt. 1-8. She has reported as required to all of her check-in appointments with ICE and has no criminal history or arrests. Dkt. 1 at 2, 11.

On April 22, 2026, Petitioner appeared as required for her scheduled ICE check-in appointment. *Id.* at 2. Upon her arrival, she was served with a form I-213, a Notice to Appear (NTA), and a Record of Deportable/ Inadmissible Alien, and taken into custody. *Id.* Prior to her arrest, Petitioner was not given any notification that her parole would be revoked, or any

opportunity to challenge or be heard regarding the revocation of her parole. *Id.* The officers did not provide Petitioner with any reason for her detention. *Id.* On April 23, 2026, Petitioner was transported to Adelanto Detention Facility, where she remains detained. *Id.* at 3.

While in custody, Petitioner filed a petition for writ of habeas corpus on May 4, 2026. *See Erica Benavidez-Pena v. DHS Secretary Markwayne Mullin*, No. 5:26-cv-02380-MBK ("*Benavidez-Pena I")*. Petitioner argued that her ongoing detention without a bond hearing violated 8 U.S.C. § 1226(a) and due process. *Id.* at 6-7. In their Answer, Respondents conceded that Petitioner is a member of the Bond Eligible Class in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV- 01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). *Benavidez-Pena I*, Dkt. 10. Accordingly, this Court granted the Petition, and ordered "the relief required by the *Maldonado Bautista* final judgment—a bond hearing under Section 1226(a)." *Benavidez-Pena I*, Dkt 13 at 3.

Consistent with this Court's order, Respondents provided Petitioner with a bond hearing on May 19, 2026, pursuant to 8 U.S.C. § 1226(a). Dkt. 1-6 (Order of the Immigration Judge). "In that hearing Petitioner's attorneys presented over 90 pages of documents from relatives and friends detailing their intention to provide economic support for Petitioner and guaranteeing her continued appearance before all ICE or EOIR appointment or hearings." Dkt. 1 at 9. The Immigration Judge ("IJ") denied Petitioner's release on bond, finding her to be a "flight risk, which no amount of bond can mitigate." *Id.*

Petitioner filed the instant habeas petition on June 11, 2026. Dkt. 1-6. Petitioner alleges that her re-detention and continued confinement violates: (1) procedural due process; (2) 8 C.F.R. §§ 241.4(1), 241.13(i); and (3) substantive due process. *Id.* at 11-14. Petitioner requests that the Court order

4

her immediate release and prevent her detention "without reasonable notice and an opportunity to be heard." *Id*. at 14.

On June 11, 2026, the Court entered the Notice of General Order 26-05 and Briefing Schedule. Dkt. 5. On June 18, 2026, Respondents filed an Answer in which they argue that the Court does not have jurisdiction to review the IJ's bond decision, that Petitioner is improperly attempting "to bring a collateral attack on her immigration court proceedings via the habeas process," and that Petitioner did not exhaust her administrative remedies prior to seeking federal review. Dkt. 7 at 3-5. Respondents do not address Petitioner's due process claims in their Answer. On June 22, 2026, Petitioner filed a reply in which she argues for her immediate release. Dkt. 8.

## II.    DISCUSSION

Petitioner Benavidez-Pena argues that her re-detention and continued confinement violates procedural and substantive due process, and the immigration regulations. While Respondents oppose Petitioner's claims on jurisdictional grounds, they do not oppose the merits of her claims that she was re-detained without adequate process or that the IJ's bond determination was erroneous. For the reasons that follow, the Court rejects Respondents' arguments that the federal courts lack jurisdiction to consider Petitioner's habeas claims and that, in any event, the Court should decline to consider them because Petitioner failed to fully exhaust administrative remedies. Because Respondents offer no opposition to Petitioner's claims on the merits,

the Court concludes that Petitioner entitled to habeas relief on her due process claims.

**A. The Court Has Jurisdiction to Consider Petitioner's Habeas Claims**

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301-03 (2001)). Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through Section 1226(e). Dkt. 7 at 3. The Court concludes that this provision does not bar habeas review of Petitioner's claims.

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." As discussed further below, "this section" —Section 1226—governs the Government's discretionary authority to detain or release a noncitizen in immigration proceedings. Section 1226(e) therefore precludes a noncitizen from "challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality) (cleaned up).

Nonetheless, the federal courts retain jurisdiction to consider constitutional claims or questions of law regarding bond determinations, including "mixed questions" involving the application of law to facts. The Ninth Circuit has found that the immigration courts' determination that a

6

noncitizen presents a danger by "clear and convincing" evidence is such a "mixed question" amenable to federal court review. *See Martinez v. Clark,* 124 F.4th 775, 783 (9th Cir. 2024). The same rationale applies to flight risk. Although what constitutes flight risk or dangerousness "is malleable and involves agency discretion, *Wilkinson* instructs that this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Id.* (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). *Martinez* establishes that federal courts should review an IJ's flight risk determination under an abuse of discretion standard. *Id.* at 784 ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion.").

Here, Petitioner challenges the IJ's determination that she presents an unmanageable flight risk, which *Martinez* establishes is a "mixed question" involving the application of law to fact. Petitioner also challenges her re-detention on procedural due process grounds, which presents a question of law to which Section 1226(e) does not apply. The Court therefore rejects Respondents' argument that Section 1226(e) bars federal court review of Petitioner's habeas claims.

**B. Petitioner Has Shown that a Waiver of Exhaustion is Warranted**

Respondents argue that the Court should decline to address Petitioner's claims because she has not fully exhausted administrative remedies. It appears that Petitioner did not appeal the IJ's bond decision to the Board of Immigration Appeals ("BIA"). Dkt. 8 at 8. Petitioner further avers that the deadline to file the appeal passed on June 18, 2026. *Id.*

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that

7

habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

Petitioner concedes that she has not fully exhausted administrative remedies, but argues that exhaustion should be excused because Petitioner will suffer irreparable harm by remaining detained during the appeal and because an appeal would be futile. Dkt. 8 at 8.

The Court finds that a waiver of exhaustion is warranted for several reasons. First, the nature of Petitioner's claims favors waiving exhaustion. The Petition raises a procedural due process claim challenging her re-detention without adequate process. It is futile to require exhaustion of this claim because the immigration courts "do[] not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006). *See In Re Fuentes-Campos*, 21 I.

8

& N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer."). While the BIA would have authority to review the IJ's determination that Petitioner is a flight risk, that determination is not "fact-intensive" and "'administrative appellate record is not necessary to resolve'" Petitioner's challenge to it. *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at \*10–11 (C.D. Cal. Mar. 5, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017)). That is particularly true because Respondents do not defend the IJ's determination on the merits.

Second, Respondents prolonged the resolution of Petitioner's claims by unlawfully denying her a bond hearing at the outset of her detention. Even though Respondents acknowledged that they were obligated to provide Petitioner a bond hearing under Section 1226(a) pursuant to the judgment in *Maldonado Bautista*, they nonetheless denied her a bond hearing until Petitioner was forced to file a habeas petition and this Court ordered Respondents to comply with their legal obligations under *Maldonado Bautista. See Benavidez-Pena I*, Dkt 13. Because Respondents knowingly violated Petitioner's rights and unlawfully denied her a bond hearing, the Court does not believe it prudent to further delay the resolution of Petitioner's claims. *See Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at \*6 (C.D. Cal. June 12, 2026) (in 2024, publicly available data indicates that that the average processing time for bond appeals 204 days).

Accordingly, the Court waives the prudential exhaustion requirement.

## C. The IJ Abused Its Discretion by Denying Petitioner's Release as a Flight Risk

Petitioner challenges her ongoing detention on substantive due process grounds. *See* Dkt. 1 at 12-13 (asserting that Petitioner has a liberty interest

9

after previously being released on parole for four years and the Government has not identified any basis to justify detaining Petitioner, making her detention arbitrary and capricious). As with Respondents, (Dkt. 7 at 3), the Court construes Petitioner's claim to challenge the IJ's bond determination that she presents a flight risk.

Under *Martinez*, this Court reviews the IJ's danger finding for "abuse of discretion." 124 F.4th at 784. Under that deferential standard, the reviewing court determines whether the IJ "'applied the correct legal standard'" and may not "'reweigh evidence.'" *Id.* at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). An IJ "'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,'" *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)), or "'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).

In light of the fact that Respondents do not defend the IJ's determination on the merits, the Court finds that the IJ abused its discretion by denying Petitioner's release. The IJ found that Petitioner is "[f]light risk, which no amount of bond can mitigate." Dkt. 1-6.[1] However, the IJ cited no evidence and provided no reasoning to support its determination. *See Singh v. Warden, Golden State Annex Detention Facility*, No. 1:26-cv-01973-DAD-CSK,

---

[1] Respondents repeatedly refer to the hearing as a "*Rodriguez* hearing," under which the Government bears the burden by clear and convincing evidence. Dkt. 7 at 2-4. However, the IJ's decision reflects that the bond hearing was conducted pursuant to 8 C.F.R. § 1236, (Dkt. 1-6), and this Court's order required a bond hearing under Section 1226. *See Benavidez-Pena I*, Dkt 13. The Court therefore proceeds with the understanding that the IJ conducted the bond hearing pursuant to Section 1226, under which the noncitizen bears the burden to demonstrate that they should be released. *See* 8 C.F.R. § 1236.1(c)(8).

2026 WL 1328588, at *6 (E.D. Cal. May 13, 2026) ("many district courts have recently concluded that an immigration judge abuses their discretion when they deny release on bond without any explanation of their reasoning in doing so" and collecting cases); *Aslan v. Semaia*, et al., No. 5:26-CV-02347-MAR, 2026 WL 1722902, at *7 (C.D. Cal. June 11, 2026) ("courts in this circuit have found that an IJ abuses their discretion when they fail to explain why the factors addressed established flight risk or how those factors outweigh significant evidence showing a petitioner is fixed and stable in the community" and collecting cases). Petitioner avers that she submitted over 90 pages of documents from relatives and friends who committed to provide economic support for Petitioner, and guarantee her continued appearance before all ICE or EOIR appointments or hearings. Dkt. 1 at 9. The IJ did not address this evidence in its decision. *See Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (finding an IJ abused its discretion when it "did not explain the reasons for denying Miri's bond" or address evidence presented by the petitioner).

In addition, the record shows that Petitioner complied with her conditions of release during her three and a half years on parole, including by appearing for her supervision appointments, pursuing her asylum claims, maintaining employment, and not committing any criminal offenses. Petitioner was arrested when she appeared as instructed for an ICE check-in appointment, which strongly indicates that Petitioner is not attempting to evade immigration authorities or flee. *See Fernando A.G. v. Chestnut*, No. 1:25-CV-01925-SKO, 2026 WL 74007, at *6 n.6 (E.D. Cal. Jan. 9, 2026) (finding it significant that the petitioner "was arrested in the context of complying with an order to check in on December 3, 2025" after alleged ISAP violations); *Singh v. Warden of Golden State Annex*, No. 1:26-cv-01406-KES-

11

HBK, 2026 WL 1108233, at \*1 (E.D. Cal. Apr. 23, 2026) (same)

In sum, given Petitioner's significant connections in the United States, her incentive to appear for ongoing proceedings to determine if she will be granted asylum or other relief, her previous record of compliance, and the availability of conditions of release to mitigate any risk of flight, the IJ abused its discretion by finding Petitioner a flight risk.

**D. Petitioner's Re-Detention Violates Procedural Due Process.**

Petitioner argues that procedural due process principles prohibit the Government from re-detaining her without adequate pre-deprivation process. Respondents do not address Petitioner's procedural due process claim in their Answer. Respondents' failure to contest Petitioner's claims in their Answer is a concession that the Petition should be granted. *See Singh v. Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at \*3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at \*1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Nevertheless, the Court will address the merits of Petitioner's procedural due process claim. A "two-step analysis" applies to procedural due process claims. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, the Court must determine if Petitioner was deprived of a constitutionally protected interest. *Id.* Second, if such an interest exists, the Court then

considers "whether that deprivation was accompanied by sufficient procedural protections." *Id.* To evaluate the adequacy of procedural protections, the Court applies the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976).

### 1. Petitioner has a Constitutionally Protected Liberty Interest

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Petitioner therefore has a constitutionally protected interest in freedom from incarceration. In addition, Petitioner has been living at large in the United States for the past three and a half years pursuant to her release on conditional parole, during which time she has developed significant ties in the United States. As discussed more fully below, Petitioner has a significant liberty interest in maintaining her settled life with her family outside of custody. Respondents do not dispute that Petitioner has a constitutionally protected interest in remaining free from confinement. As such, the Court concludes that Respondents deprived Petitioner of a constitutionally protected liberty interest when they re-detained her.

13

### 2. *Mathews* Balancing Test

Because Respondents deprived Petitioner of a protected liberty interest, the Court considers "whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

#### a. Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. Petitioner has lived in the United States for three and a half years, during which time she has been gainfully employed and developed ties with his family and community.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

Even if Petitioner has "a lesser liberty interest" "at the margin" than other noncitizens released pending removal proceedings, "the same important interest is at stake—freedom from prolonged detention" and the potential loss of the important ties that Petitioner has developed in the United States. *Diouf*

*v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

For these reasons, numerous courts in this District and throughout the country—including the undersigned Magistrate Judge—have found noncitizens paroled into the United States, or released on conditional parole shortly after their entry into the United States, for comparable periods have a significant liberty interest in maintaining their freedom from confinement. *See Lugos v. Mullin,* No. 5:26-cv-01880-KES, 2026 WL 1250264, at *5 (C.D. Cal. May 1, 2026) ("nearly two years"); *Medrano-Rocha v. Santacruz*, No. 2:26-cv-00404-KK-SSC, 2026 WL 411355, at *3 (C.D. Cal. Jan. 23, 2026) ("nearly three years"); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("approximately three years"). *See also Torres*, 2026 WL 145715, at *5 ("This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.") (collecting cases); *G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–10 (E.D. Cal. 2025) (same).

### b.  Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of [her] liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699.

The record suggests that Petitioner is not a flight risk or danger.

Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz,* No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on parole after her initial detention by ICE in 2022. The Government may release a noncitizen on parole "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), only if the noncitizen is "neither a security risk nor a risk of absconding." 8 C.F.R § 212.5(b*). See also Kharb v. U.S. Dep't of Homeland Sec.*, No. 5:26-cv-00656-DOC-E, 2026 WL 485765, at *2 (C.D. Cal. Feb. 17, 2026) ("Release under [8 U.S.C. § 1182(d)(5)(A)] therefore 'reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.' ") (quoting *Fernandez Lopez v. Wofford*, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319 at *2 (E.D. Cal. Oct. 17, 2025)).

Since her release in 2022, Petitioner has not given any reason to think that the Government's determination was in error. She has complied with her conditions of supervision and maintained a stable life in the United States. She has no criminal arrests or convictions. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—resulted in Petitioner's unnecessary detention.

### c. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz,* 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been

16

determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

\* \* \*

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's re-detention violated due process. Accordingly, the Court ORDERS the following: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Erica Antonia Benavidez-Pena's (A# 246-685-895) immediate release and prohibiting her re-detention absent pre-deprivation notice and a hearing where the Government must show material changed circumstances justifying Petitioner's detention; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

17

Dated: June 25, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

18